No. 56,464

Ron Donner, *et al., Appellees/Cross-Appellants,* v. Kansas Department of Human Resources, *Appellant/Cross-Appellee.*

(691 P.2d 21)

Opinion filed November 30, 1984.

*Patricia Scalia Carpenter,* of the Department of Human Resources, argued the cause and was on the brief for the appellant/cross-appellee.

*Robert E. Duncan, II,* of Davis & Bennett, of Topeka, argued the cause and was on the brief for the appellees/cross-appellants.

The opinion of the court was delivered by

Prager, J.: This is an appeal in an administrative proceeding, instituted pursuant to K.S.A. 1983 Supp. 75-6201 *et seq.,* in which the Kansas Department of Human Resources (KDHR) sought repayment of contributions made to the Kansas Public Employees Retirement System (KPERS) on behalf of certain employees of Unified School District No. 270. The employees are: R. C. Donner, Gia Folkerts, Linda Groff (Williams), Danny L. Leak, Charles Schroder, Stephen Scott, Donald Shorock, Richard Snook, Tony Sumaya, and Joseph Walter. We will refer to them as the employees or respondents.

The facts in the case are not in dispute and essentially are as follows: Prior to 1978, the KDHR was designated by the Governor as the agency to administer federal funds received under the Comprehensive Employment Training Act (CETA). CETA is a job training program for disadvantaged people. CETA funds are used in part for the payment of certain costs occurring in the administration of the program including salaries of CETA staff

positions. In order to receive CETA funds, Unified School District No. 270 of Plainville, Kansas, as contractor and employer of the respondents, created certain staff positions whose salaries were paid with CETA funds. To obtain those CETA funds, the school district entered into a series of contracts with the State of Kansas through KDHR.

In 1979, the respondents, as employees of the school district, sought a pay raise. The school district agreed with the CETA employees to pay, in addition to their salaries, their employee contributions to KPERS. It is undisputed that this contract was entered into in good faith and there is no claim of fraud. No specific deductions were made from the checks of the CETA employees in addition to the KPERS payments which were to be made by the school district. Contracts for CETA funds providing for these KPERS contributions were submitted by the school district to KDHR prior to the calendar years 1979, 1980, and 1981. Each of these contracts showed, as a CETA budget breakdown, the payment of 4% KPERS benefits to personnel by the school district. Each of these contracts was approved by an authorized representative of the school district and also by the CETA administrator of KDHR. These contracts were entered into with a full disclosure, in good faith, and without knowledge of any legal infirmities therein.

Two audits were conducted by KDHR which approved several of these contracts. A later audit held improper and illegal the payment of the KPERS contributions on behalf of the employees by the school district. The sole basis for the auditor's conclusion that the payment of KPERS contributions as "fringe benefits" was illegal was the statutory provision found in K.S.A. 1983 Supp. 74-4919, which provides as follows:

"74-4919. **Member contributions; deductions; disposition; interest.** *Each participating employer,* beginning with the first payroll for services performed after the entry date, *shall deduct from the compensation of each member 4% of such member's compensation as employee contributions. Such deductions shall be remitted quarterly, or as the board may otherwise provide, to the executive secretary for deposit in the Kansas public employees retirement fund.* Such deductions shall be credited to the members' individual accounts and interest shall be added annually to such accounts." (Emphasis supplied.)

It should be noted that K.S.A. 1983 Supp. 74-4919 does not prohibit any act or prescribe a penalty. It simply requires that *participating employers* deduct from the compensation of each

employee 4% of his compensation as the employee's contribution to KPERS. Such deductions are to be remitted quarterly to the executive secretary of KPERS for deposit in the Kansas public employees retirement fund. In finding the contract provision for payment of the KPERS contributions by the school district to be illegal, the auditor relied on an opinion of Marshall Crowther, a special assistant attorney general, issued January 30, 1974. This opinion quoted K.S.A. 74-4919 and then concluded:

"Compensation is defined in K.S.A. 74-4902(9) as all payments for services exclusive of maintenance and overtime. Once the employee compensation is determined the amount of employee contributions for retirement purposes must be deducted and remitted to the retirement system. We can find no authority for the employer to make such a payment on behalf of the employee in addition to the compensation received by the employee and thus conclude that such payments would be contrary to law."

Following the third audit, the auditor's report, which included the reference to K.S.A. 1983 Supp. 74-4919, was called to the attention of the CETA administrator of KDHR, the administrators of school district No. 270, and also the various employees. It was pointed out that no KPERS payroll deductions were actually *withheld* by the school district from the employees' gross wages as required by K.S.A. 1983 Supp. 74-4919. The employment contracts were immediately modified and, after 1981, the contractual provision objected to was eliminated.

The audit was apparently brought to the attention of the federal government which at the time of the hearing had not made any specific claim for a refund. KDHR decided to recover back the funds paid to the various employees by utilizing the administrative procedure provided for in K.S.A. 1983 Supp. 75-6201 *et seq.* K.S.A. 1983 Supp. 75-6201 declares that state agencies shall cooperate in identifying debtors who owe money to the state and that procedures be established for setting off against debtors the sum of any debt owed to the state. In 75-6202(a), the term "debtor" is defined as any person owing a debt to the State of Kansas or any state agency. "Debt" means any *liquidated* sum due and owing to the State of Kansas or any state agency which has accrued through contract, subrogation, tort, operation of law, or any other legal theory *regardless of whether there is an outstanding judgment for that sum.* Since all of the claimed debtors were at that time being paid by the state, the state decided to utilize this administrative remedy. A formal

hearing was held before an administrative hearing officer. She relied solely on the provisions of K.S.A. 1983 Supp. 74-4919, and the opinion of the assistant attorney general mentioned above, in holding that there was no authority for the employer, school district No. 270, to make KPERS payments on behalf of the employees and, thus, such payments were contrary to law and should be set off against the employees' future salaries.

At the hearing, the employees argued that the contract for the payment of KPERS contributions by the school district was not illegal and, furthermore, that the employees were not "debtors" under the setoff statute (K.S.A. 1983 Supp. 75-6201 *et seq.*). The administrative hearing officer rejected these contentions and entered an order finding that each of the employees owed a debt to the State of Kansas in amounts varying from $314.32 to $2,188.35 which were to be set off against the future earnings of the various employees. All of the employees filed a timely appeal to the district court of Shawnee County.

The district court on appeal accepted the factual determinations of the administrative hearing officer. The essential facts were undisputed and, in substance, are those set forth above. In district court, counsel for the employees presented three basic arguments which it had previously presented before the administrative hearing officer. They were in substance as follows:

(1) The employment contract was not illegal under K.S.A. 1983 Supp. 74-4919 which does not prohibit contracts requiring an employer to pay KPERS contributions as a fringe benefit.

(2) If there is a debt, it is not a debt of the employees. It is a debt of Unified School District No. 270 which entered into contracts directly with KDHR approving the KPERS deductions.

(3) The doctrine of estoppel operates against the State, because the State, acting through its CETA administrator, approved the payment of KPERS benefits directly by the school district. Counsel for the employees maintained that the only contracting parties for the payment of CETA funds were the State, acting through KDHR, and school district No. 270. The employees themselves did not enter into a contract with the State. They simply had individual employment contracts with the school district for compensation for services to be rendered. After the proposed contracts for payment of KPERS contributions by the school district were approved in advance by the State, the

employees performed services in reliance upon their employment contracts. Under these circumstances, it was contended, the State had no right to complain and it was estopped to seek recovery of the KPERS payments from the employees.

The district court held that K.S.A. 1983 Supp. 74-4919 was clear on its face and that the court was bound to give effect to the intention of the legislature as expressed therein. The court interpreted 74-4919 to mean that the 4% KPERS contributions *must* be deducted from the employees' compensation. In this case, the 4% KPERS contributions were *paid* by the school district using CETA funds. The contributions were never actually *deducted* from the employees' compensation as required by the statute. Consequently, whether or not an employment contract existed which required a third party (the school district) to pay the 4% KPERS contributions, the contributions must still be deducted from the compensation of the employees by the employer.

The district court next considered whether the obligation to repay the KPERS contributions was a debt of the individual employee or a debt of the employer, school district No. 270. The trial court concluded that the debt was that of the school district and not a debt of the individual employee. It noted that, under K.S.A. 1983 Supp. 74-4919, the school district, as the participating employer, is required to deduct the KPERS contributions from an employee's compensation. The responsibility does not lie with the employee. If there were any improper payments of KPERS contributions made, they were not the fault of the employees but of the employer school district. The district court entered judgment setting aside the decision rendered by the administrative hearing officer and entered judgment in favor of the employees. KDHR, feeling aggrieved by the decision of the district court, filed a timely appeal which was subsequently assigned to the Kansas Supreme Court. The employees filed a cross-appeal, attacking the holding of the district court that a school district could not legally enter into a contract with its employees providing that the 4% KPERS deductions required by K.S.A. 1983 Supp. 74-4919 be paid by the employer as a "fringe benefit."

At the outset, it must be emphasized that the sole claim of invalidity of the provision of the employment contract between

school district No. 270 and its employees was that it was contrary to the provisions of K.S.A. 1983 Supp. 74-4919. At the administrative hearing, it was candidly admitted by the then acting CETA director and by the auditor supervisor of KDHR that there was no federal regulation or statute which prohibited the payment of pension benefits, such as KPERS benefits, for an employee by the school district. Thus, the first issue which must be determined is whether the contractual provision in the employment contracts entered into between school district No. 270 and its employees, providing that the 4% KPERS payments would be paid as a "fringe benefit," was illegal and unenforceable under K.S.A. 1983 Supp. 74-4919. To determine this issue we must examine carefully the provisions of the Kansas Public Employees Retirement Act (K.S.A. 74-4901 *et seq.*). The purpose of the act is stated in 74-4901 as follows:

"74-4901. **Purpose of act.** The purpose of this act is to provide an orderly means whereby employees of the participating employers who have attained retirement age as herein set forth may be retired from active service without prejudice and without inflicting a hardship upon the employees retired and to enable such employees to accumulate reserves for themselves and their dependents to provide for old age, death and termination of employment, and for the purpose of effecting economy and efficiency in the administration of governmental affairs."

In K.S.A. 1983 Supp. 74-4902(9), compensation is defined to include all salary, wages, and fees payable to a participating employee including maintenance or any allowance in lieu thereof as part of compensation, but shall not include compensation as reimbursement for traveling or moving expenses. Under that section, a payment of "fringe benefits" in the form of KPERS contributions would clearly fall within the definition of compensation. In 74-4902(21), the term "member" is defined as an eligible employee who is in the system and is making the required employee contributions. At 74-4902(24), the term "participating employer" is defined as an eligible employer who has agreed to make contributions to the system on behalf of its employees. Simply stated, the other provisions of the act establish the Kansas public employees retirement system as a body corporate and as an instrumentality of the State of Kansas. The system may sue and be sued in its own official name. The system may conduct administrative hearings to determine controversies that might arise between the board of trustees of the system and any aggrieved person, whether an employer or a member. It is

obvious to us that the legislative purpose of the statutes creating the Kansas public employees retirement system was to enable the employees to accumulate reserves for themselves and their dependents on retirement and to insure a fiscally solvent retirement system.

K.S.A. 1983 Supp. 74-4919 requires the deduction from the compensation of each member of 4% of his compensation for one purpose and one purpose only—to make KPERS financially sound so that money will be available to pay the retirement benefits provided for in the act. In our judgment, K.S.A. 1983 Supp. 74-4919 does not render an employment contract providing for the payment of KPERS contributions by the employer illegal and unenforceable. 74-4919 does not contain a prohibition against any act or prescribe any penalty. Where the school district and its employees contract that each employee shall receive, as compensation, a certain salary *plus* a payment of 4% into the KPERS fund, such a contract is not prohibited. However, such a contractual provision would obviously determine the amount of an employee's *gross income* not only for income tax purposes but also for the purpose of calculating what is a correct 4% KPERS deduction to be paid into the KPERS fund.

On the basis of this reasoning, we hold that the employment contract between the school district and its employees for the payment of compensation consisting of a fixed salary plus the payment of KPERS benefits as a "fringe benefit" was not invalid. However, the sums paid by the school district as KPERS contributions are to be considered as a part of each employee's compensation for income tax purposes and also for the purpose of calculating the amount which would constitute a proper 4% KPERS contribution.

In reliance on their employment contract, the employees of the school district performed services with the expectation of receiving a certain gross income consisting of a salary plus KPERS payments as a "fringe benefit." Before that contract became effective, it was submitted to KDHR whose CETA administrator approved the "fringe benefit." There has been no legal justification shown for setting aside that portion of the employment contract requiring the school district to make the KPERS payments based upon the provisions of K.S.A. 1983 Supp. 74-4919. However, it should be noted that in the future in

some other forum issues may be raised as to whether these employees owe additional KPERS contributions. In view of our determination of this issue, it is not necessary to discuss the other issues raised on the appeal.

For the reasons set forth above, we affirm the judgment of the district court in favor of the employees, the appellees/cross-appellants on this appeal.